```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ALABAMA
                     SOUTHERN DIVISION

FEDERAL  HOME  LOAN  MORTGAGE }
CORPORATION,                  }
                              }
     Plaintiff and counter-   }    CIVIL ACTION NO.
     defendant,               }    2:14-cv-1690-WMA
                              }
v.                            }
                              }
EVELYN B. SHAFFER,            }
                              }
     Defendant, counter-      }
     claimant and third-party }
     plaintiff,               }
                              }
v.                            }
                              }
OCWEN LOAN SERVICING, LLC,    }
                              }
     Third-party defendant.   }
```

## MEMORANDUM OPINION

On November 27, 2012, Federal Home Loan Mortgage Corporation ("Freddie Mac" or "plaintiff") filed the above-entitled suit against Evelyn B. Shaffer ("Shaffer" or "defendant") in the Circuit Court of Jefferson County, Alabama.  Freddie Mac sought one simple remedy available under the law of Alabama, namely, the eviction of Shaffer from certain real property, the title to which Freddie Mac had ostensibly acquired at a foreclosure sale.  On September 2, 2014, nearly 22 months later, Freddie Mac removed the case to this court.  For the purposes of this court's inquiry into Freddie Mac's right to remove under these circumstances, there is no significance to the fact that before the removal, Shaffer filed a counterclaim

1

against Freddie Mac and a third-party complaint against Ocwen Loan Servicing, LLC ("Ocwen"), attacking the foreclosure sale, or the fact that Ocwen did not join in Freddie Mac's notice of removal.

Indispensable to any removal is a showing that the district court to which the case is removed has subject matter jurisdiction. The burden of satisfying the court on this threshold issue is firmly and always upon the removing party.

Freddie Mac's notice of removal conspicuously invokes neither of the two customary bases for federal jurisdiction, namely, complete diversity of citizenship between the opposing parties (28 U.S.C. § 1332)[1] or the existence of a federal question (28 U.S.C. § 1331). Rather, Freddie Mac's **sole** basis for positing jurisdiction in this court is 12 U.S.C. § 1452(f), a *sui generis* statute, so peculiar, in fact, as to call for its meticulous examination as it applies or does not apply to the facts of this case. The statute reads as follows:

> **(f) Actions by and against the Corporation [Freddie Mac]; jurisdiction; removal of actions**
> Notwithstanding section 1349 of Title 28 or any other provision of law, (1) the Corporation shall be **deemed** to be an **agency** included in sections 1345 and 1442 of such Title 28; (2) all civil actions to which the Corporation is a party shall be **deemed** to arise under the laws of the

---

[1] Freddie Mac is not a citizen of any state because federally chartered corporations like Freddie Mac are not citizens of any state for diversity purposes. *Bankers Trust Co. v. Texas & Pac. Ry.,* 241 U.S. 295, 309 (1916). Therefore, diversity cannot serve as a basis for subject matter jurisdiction in this court.

> United States, and the district courts of the United States shall have original jurisdiction of all such actions, without regard to amount or value; and (3) any civil or other action, case or controversy in a court of a State, or in any court other than a district court of the United States, to which the Corporation is a party may at any time before the trial thereof be removed by the Corporation, without the giving of any bond or security, to the district court of the United States for the district and division embracing the place where the same is pending, or, if there is no such district court, to the district court of the United States for the district in which the principal office of the Corporation is located, **by following any procedure for removal of causes in effect at the time of such removal**. (emphasis added.)

In its notice of removal, Freddie Mac expressly relies upon 12 U.S.C. § 1452(f)(1), and even quotes part of it *in haec verba*: "The corporation shall be deemed an agency included in sections 1345 and 1442 of such Title 28." (Doc. 1). Relying upon § 1452(f)(1), Freddie Mac not only claims that, as a matter of law, it is an agency of the United States within the purview of 28 U.S.C. §§ 1345 and 1442, but that by virtue of the subsequent language in § 1452(f)(2) its simple, straight-forward state-law claim, has been transmogrified into a claim that arose under the laws of the United States; and that § 1452(f)(3) grants it the unrestrained right, long after it filed its ejectment action in state court, to remove it to this court, a court that it suddenly prefers for no articulated reason.

Even without a challenge to this court's subject matter jurisdiction, the court is obligated, as its first responsibility, to conduct a *sua sponte* examination to satisfy itself, if it can do

so, that it has subject matter jurisdiction. See 28 U.S.C. § 1447(c); *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 17 (1950); *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking"). This court will therefore now undertake its obligatory self-examination of whether or not it has jurisdiction.

Neither the Supreme Court nor the Eleventh Circuit has answered the jurisdictional questions presented here by § 1452(f). Without any binding precedent, the court is left with (1) the undisputed procedural facts of this case; (2) the pertinent statutes themselves; (3) a meager number of non-binding court decisions, only one of which the court finds persuasive; and (4) the rules of statutory construction. The single court decision that this court finds persuasive is *Federal Home Loan Mortgage Corporation v. Amersey*, 2014 WL 1400086 (E.D. Mich., April 9, 2014). *Amersey* is not only the most recent case on point, but it is a case that shares with the above-styled case all of the pertinent procedural facts, and in which the Eastern Division of Michigan remanded Freddie Mac's state court ejectment action to the state court from which Freddie Mac had improvidently removed it. The discussion that follows confessedly borrows heavily from *Amersey*.

4

**UNDERSTANDING 12 U.S.C. § 1452(f)**

**Rule of Construction Number One**

This court necessarily begins its analysis with the strong presumption arising from the principle that "'[f]ederal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 133 S. Ct. 1059, 1064, (2013), quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). "Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." *Univ. Of S. Alabama v. Am. Tobacco Co.*, 168 F3d 405, 411 (11th Cir. 1999), citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941). This means, *inter alia*, that any ambiguity in, or doubt about, a removal, or the basis for jurisdiction, is to be resolved against the removing party. This court is well-known, if not notorious, for its adherence to this first principle.

**Rule of Construction Number Two**

The statutory provisions upon which Freddie Mac relies must be read *in pari materia*. "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989). In this case, the language of § 1452(f) grafts itself onto the preexisting statutory and constitutional structure that

5

establish federal jurisdiction. They are found in Title 28 of the United States Code and in the Constitution. Therefore, this court must view, and must construe, § 1452(f) as part of a "symmetrical and coherent regulatory scheme." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000), quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995). "All parts [must be fitted] into a harmonious whole," *Id., quoting FTC v. Mandel Bro's, Inc.*, 359 US. 385, 389 (1959), that is, of course, if a "harmonious whole" can be found.

Because § 1452(f) says that Freddie Mac "shall be **deemed** to be an **agency** included in sections 1345 and 1442 of such Title 28" (emphasis added), a casual read of the statute might lead the reader to the simplistic conclusion that it is an "agency" for all of the intents and purposes of Title 28, and therefore, by inference, that it is the only one of the myriad United States agencies that enjoys unfettered access to the federal courts in all litigation in which it finds itself. Without saying so, Freddie Mac is necessarily arguing that Congress has given it startlingly preferential treatment over all other congressionally created entities, and has endowed it with rights given to no other government entity. Such a loose and casual reading is woefully inadequate in light of the presumption against removeability.

A full comprehension of § 1452(f) requires that the statute be read both as an independent piece of legislation and as a part of Title 28 **as a whole.** Furthermore, each paragraph and provision of § 1452(f) must be read in relation to its other paragraphs and provisions, with a view to making sense of the whole.

In 28 U.S.C. § 451, Congress defined governmental "agencies" for Title 28 purposes, as follows:

> The term "agency" includes any department, independent establishment, commission, administration, authority, board or bureau of the United States, or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense.

If Freddie Mac had met this definition, there would have been no need for Congress to "deem" it an "agency" for any Title 28 purpose whatsoever.  Congress obviously knew that Freddie Mac did not meet the criteria in § 451. The central characteristic of an "agency" for Title 28 purposes is the "proprietary interest" that the United States has in it. This characteristic is consistent with the "agency" concept applied to Freddie Mac in other areas of law. For example, the Seventh Circuit has determined that Freddie Mac is not a federal agency for the purposes of the Federal Tort Claims Act because, unlike the Federal Deposit Insurance Corporation, Freddie Mac "is privately owned, is structured to function independently of the federal government to a great extent, and receives no appropriations from Congress." *Mendrala v. Crown Mortg. Co.*, 955

F.2d 1132, 1139 (1992). Similarly, the Ninth Circuit has held that Freddie Mac is not a federal agency for the purposes of constitutional analysis because the government has not retained sufficient control over it. *Am. Bankers Mortgage Corp. v. Fed. Home Loan Mortgage Corp.*, 75 F.3d 1401, 1407 (9th Cir. 1996)("Freddie Mac's board of directors consists of 18 persons, of whom 13 are elected annually by the voting common shareholders. 12 U.S.C. § 1452(a)(2)(A). Freddie Mac has apparently issued nearly 60 million common shares of stock, and its shares are publicly traded on the New York Stock Exchange"). Freddie Mac's recent travails have done nothing to alter its status as a mere quasi-agency.

For the purposes of determining whether federal jurisdiction exists over suits by or against bonafide federal agencies, 28 U.S.C § 1349 outlines the reach of federal courts over controversies in which corporations created by federal statute are involved. This statute reads:

> The district courts shall **NOT** have jurisdiction of any civil action by or against any corporation upon the ground that it was incorporated by or under an Act of Congress, unless the United States is the owner of more than one-half of its capital stock. (emphasis added).

Apparently recognizing that Freddie Mac could not, without special treatment, obtain access to the federal courts in the face of § 1349, Congress purported to relieve Freddie Mac from the application of § 1349 **in certain instances** by starting § 1452(f) with these words: "Notwithstanding section 1349 of Title 28 or any

other provision of law. . ." This prefatory declaration, coupled with the omission of any reference in § 1452(f) to 28 U.S.C. § 941, reflects that Congress only intended Freddie Mac to be "deemed" an "agency" for the very limited and narrow purposes recognized in 12 U.S.C. § 1452(f)(1), and no other. These limited and narrow purposes are those that appear in 28 U.S.C. §§ 1345 and 1442.

### Rule of Construction Number Three

The maxim *expressio unius est exclusio alterius* applies here. In § 1452(f)(1), Congress admittedly purported to "deem" Freddie Mac an "agency", something Freddie Mac clearly is **NOT** under the definition found in § 451. It is only "deemed" an "agency" within the contours and confines of 28 U.S.C. §§ 1345 and 1442, the only two statutes referred to in § 1452(f)(1). The fact that only these two jurisdictional statutes are listed means that all other statutes that deal with federal jurisdiction over the litigated matters of "agencies", whether "deemed" or "real", do not apply to Freddie Mac and cannot provide an avenue for it to the federal courts. Section 1345 only gives district courts original jurisdiction over actions **commenced in federal court** by the agency. This is not what happened in the instant case. Freddie Mac did not **commence** this action in a federal court. Freddie Mac only purported to invoke this court's original jurisdiction after its case had proceeded for 22 months in the **state forum it chose**.

Section 1442 recognizes federal jurisdiction only over claims brought **against** a governmental agency, and then only if the claim arose out of the discharge of some official function. Section 1442 contemplates federal jurisdiction over an agency's case only when the agency is a **defendant.** Freddie Mac is not here a **defendant.** Therefore, § 1442, like § 1345, has no application here. Congress did **not** purport to deem Freddie Mac an "agency" for all purposes listed in § 451, or for any purpose beyond §§ 1345 and 1442. The maxim "*expressio unius est exclusio alterius*" is, then, a canon of statutory construction that applies to 12 U.S.C. § 1452(f)(1), (2), and (3), and that limits Freddie Mac's right to remove to cases that are within the contemplation of § 1345 or § 1442. Congress's particular inclusions and exclusions in § 1452(f) have ultimate significance because they reflect, *inter alia*, that Congress did not mean to expand the availability of a federal forum for Freddie Mac beyond the arguably constitutional confines of Article III or to take Freddie Mac's right to remove to absurd lengths.

Another provision in § 1452(f) has great significance to an understanding of the line being drawn on Freddie Mac's access to federal court by **removal,** in contrast to its access by **commencement of suit.** That is the unequivocal requirement in § 1452(f)(3) that Freddie Mac follow "**any procedure for removal of causes in effect at the time of such removal**". (emphasis added). The only procedure for removal purportedly made available to Freddie Mac in § 1452(f)

at the time of removal was 28 U.S.C. § 1441, which allows removal only by "**the defendant or defendants**". There is no procedure anywhere in Title 28 for removal by a **plaintiff**. In its notice of removal, Freddie Mac purports to invoke § 1441, the statute that did not apply to it because it is a **plaintiff**. (Doc. 1, Notice of Removal III, A). This proves, again, that Freddie Mac had no right to remove.

### Rule of Construction Number Four

In *Amersey*, *supra*, at 2014 WL 1400086, the Eastern District of Michigan pointedly held that "allowing Freddie Mac to remove even when Freddie Mac is a **plaintiff** renders an **absurd** result." (emphasis added). This court agrees. How unreasonable and bizarre must a proposed statutory interpretation be before it must be discarded by the courts in favor of a reasonable interpretation? Freddie Mac's proffered interpretation of § 1452(f) would render the statute so "off-the-wall" that the rule against absurdities is brought to bear.  Where a particular use of words leads to an absurdity and/or a total irrationality, courts can say, in effect, "the legislature could not have meant that." *Chickasaw Nation v. United States*, 534 U.S 84 (2001); *Public Citizen v. United States Dept. of Justice*, 491 U.S. 440 (1989). Accordingly, courts should avoid, if at all possible, an interpretation that would result in an absurdity. 82 Corpus Juris Secundum, Statutes § 380. Justice

Scalia, who co-authored the textbook "Reading Law, The Interpretation of Legal Texts" (2012), in section 37, entitled "Absurdity Doctrines", points out that while a legislature's mere stupidity does not provide a basis for judicial intervention or correction, courts are responsible for interpreting a statute, if they can do so, so that it makes sense to a reasonably intelligent reader.  Freddie Mac's expansive and literalistic reading of the jigsaw puzzle in § 1452(f) would lead to an irrational and ridiculous result, and would amount to a legislative circumvention of universally recognized limitations on federal jurisdiction.

This court cannot reconcile § 1452(f)(1) with § 1452(f)(2) and (3) by allowing § 1452(f)(2) and (3) to be stretched to the meaning that Freddie Mac wants to give them. The unequivocal first sub-section of § 1452(f) would be rendered entirely meaningless unless it effectively precludes Freddie Mac's incongruous interpretations of the two sub-sections that follow. Congress could not have gone to the trouble carefully to limit Freddie Mac's court access to the particular situations referenced in §§ 1345 and 1442, while immediately wiping out the limitations it had just imposed. It makes no sense to attribute such an intent to Congress, when it is not necessary under the rules of grammar and syntax. The separate language in § 1452(f)(3) that admittingly would extend Freddie Mac's time for removal does not alter the jurisdictional

limitations unambiguously imposed by § 1452(f)(1), and those necessarily implied in 28 U.S.C. § 1441.

To reconcile § 1452(f)(1) with § 1452(f)(2) and (3), and with 28 U.S.C. § 1441, requires a recognition that when Congress used the word "party" instead of the words "plaintiff" or "defendant" in § 1452(2) and (3), it was not redefining words or repudiating the primacy of its preceding language in § 1452(f)(1). It could only have meant to grant Freddie Mac access to federal court when it is a "**party** plaintiff" in the context provided by § 1345, or a "**party** defendant" in the context provided by § 1442. By using the word "party", Congress did not, and could not, mean to alter the circumstances for removal set up in §§ 1345, 1442, and 1441.

### Rule of Construction Number Five

A mandatory and universal rule of statutory construction is succinctly found in SUTHERLAND, Statutes and Statutory Construction, Singer and Singer, Seventh Edition, Volume 3, § 57:24, as follows:

> When the constitutionality of a statute is in question, and under one construction it can be upheld, while under the other it cannot, the court will adopt the construction supporting constitutionality.

"Federal statutes are to be so construed as to avoid serious doubt of their constitutionality." *Int'l Ass'n of Machinists v. Street*, 367 U.S. 740, 749 (1961). The subject matter jurisdiction of a

13

federal court is limited both by statute and by the Constitution. "Congress may not expand the jurisdiction of the federal courts beyond the bounds established by the Constitution." *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 491 (1983). Freddie Mac's interpretation would break through clear constitutional borders. This, the court cannot allow. Probably because jurisdiction was not available to Freddie Mac under 28 U.S.C. § 1332 (diversity of citizenship), Congress, while in the process of creating Freddie Mac, attempted to "deem" it to be a federal agency for the limited jurisdictional purposes it thought might pass constitutional muster, and, while it was at it, it purported to "deem" all of the corporation's litigated matters to "arise under the laws of the United States". When Freddie Mac filed this particular ejectment action, it did not seek a federal remedy, because there was none. If the § 1452(f) concept of "deeming" a cause of action under state law to be a federal action can be tolerated, § 1345 gave Freddie Mac the right to **commence** its present action in federal court, something it did not do.  Congress is "deemed" to know that it cannot amend or ignore the Constitution and cannot give federal courts jurisdiction over controversies of every kind, and between all parties. It is constitutionally impermissible for Congress to "deem" a simple state law ejectment action to have arisen under the Constitution or laws of the United States. Federalism, as understood by the Founders and by Chief Justice Marshall, the first

14

arbiter of the concept, stands in the way. Federalist, No. 45 (Madison). If Congress intended in § 1452(f) to accomplish such a miraculous transformation of state causes of action, and to flood the federal courts with them, it was pushing the envelope beyond the bursting point. Not only could Congress by legislative legerdemain not turn a quasi-agency into a "real" governmental agency, with all of the rights and privileges enjoyed by the agencies described in § 451, but it could not "deem" a claim existing only under state law to have arisen under federal law. Not only would such a "deemer" be illusory beyond the limits of the Constitutional scheme of things, but it would be just as absurd as deeming "up" to be "down", or "right" to be "left", or "General Motors" to be a "federal agency".

An important consideration in the Constitution's fundamental concept of federalism in application to the instant case is that ejectment implicates a core area of **state** interest and power. "[D]ispossessory actions are now, and have always been, primarily state court matters [where]. . . [s]tate courts are highly familiar with dispossessory procedure, and federal courts are ill-equipped to adjudicate these actions." *Fed. Home Loan Mortgage Corp. v. Matassino*, 911 F. Supp. 2d 1276, 1284 (N.D. Ga. 2012). In fact, in its own pleading in a separate, but related*,* case, Freddie Mac openly acknowledged the potentially "chaotic consequences" of federal adjudication of such a core matter of state law. Response

15

to Court's Order of April 13, 2012 at 13-15, *Fed. Home Loan Mortgage Corp v. Matassino*, 909 F.Supp.2d 1377 (N.D. Ga. Apr. 27, 2012)(No. 1:11-cv-03895-CAP). Astonishingly, Freddie Mac itself there issued the following warning that the federal courts should take seriously:

> [T]he federal courts would preside over summary proceedings initiated by an affidavit rather than a complaint, in direct contravention of Federal Rule of Civil Procedure 1; the federal courts would be pressed to reach decisions within two weeks of service of the dispossesory warrants; federal marshals would be breaking down doors and removing people from properties; and appeals of the judgments and writs of possession would be to the Eleventh Circuit Court of Appeals. . . . **The framers of the Constitution could not have intended to promote rampant federalism by subjecting a matter, large or small, summary or plenary, to the jurisdiction of the federal courts**. *Id*. at 13-14.  (emphasis added)

### Rule of Construction Number Six

Legislative history can occasionally provide assistance in ascertaining what a legislative body intended when its enactment has no clear and plain meaning. This court has not been able to uncover any statement by a sponsor, or any debate, or any other historical document, to suggest that while Congress was creating Freddie Mac, it meant to grant it broad dispensations that it had never before granted to any other entity created by it.  If there are federal public policy reasons so important that they demand a federal forum for Freddie Mac at its option, surely one of the drafters of § 1452(f) would have tried to explain and to justify

this break-through concept. Some sponsor would have felt compelled to do so, unless, that is, no persuasive argument could be found. The conspicuous absence of any legislative history for § 1452(f) is more telling than evidence would be in the form of a vigorous debate in which the statute's sponsors had attempted the impossible, namely, to justify a quasi-agency being treated as a real agency, and to give it the unbridled right to remove all of its cases to federal court, even when it is a plaintiff. In his dissent in *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 483-84 (1957), Justice Frankfurter dealt with a similar situation, and explained:

> If there is in the phrase "arising under the laws of the United States" leeway for expansion of our concepts of jurisdiction, the history of Article III suggests that the area is not great and that it will require the presence of some **substantial federal interest. . ."** (emphasis added).

Where is the "substantial federal interest" in converting a simple ejectment action into a case arising under the laws of the United States? If Chief Justice Marshall today were asked such a far-fetched question, he would surely either laugh or recoil in horror.

## CONCLUSION

For the foregoing separate and several reasons, Freddie Mac erroneously interprets 12 U.S.C. § 1452(f). The court therefore finds that this statute does not provide it subject matter

17

jurisdiction. Thus, lacking subject matter jurisdiction, the case will be remanded *sua sponte* by separate order.

DONE this 17th day of December, 2014.

*/s/ William M. Acker, Jr.*
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT ~~JUDGE~~